# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 22-0161V**

|  |  |
|---|---|
| FLORENCE BARRETT,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: September 26, 2025 |

*Jessi Carin Huff, Mctlaw, Seattle WA, for Petitioner.*

*Voris Edward Johnson, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM[1]

On February 15, 2022, Florence Barrett filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") following an influenza ("flu") vaccine she received on September 27, 2019. Petition at ¶1, 13, 16. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Petitioner's Table SIRVA claim must be dismissed, because the evidentiary record supports the conclusion that her symptoms were not limited to the vaccinated shoulder. However, she may have a viable causation-in-fact claim to be adjudicated.

## I.    Relevant Procedural History

The parties engaged in settlement discussions for approximately six months before they reached an impasse. *See* ECF No. 30, 35. Respondent then filed his Rule 4(c) Report arguing that Petitioner had not established entitlement to compensation because Petitioner "consistently complained of pain and other symptoms that extended beyond her left shoulder." Rule 4(c) Report at 7.

I subsequently ordered the parties to brief the issue of entitlement. Petitioner filed her Motion for Ruling on the Record ("Mot."), on February 29, 2024. ECF No. 37. Respondent filed a response ("Resp.") on April 9, 2024, and Petitioner filed a reply ("Repl.") on April 16, 2024. ECF No. 38-39. The matter is now ripe for decision.

## II.    Factual History

Petitioner received a flu vaccine in her left deltoid on September 27, 2019. Ex. 11 at 2. The vaccine administrator noted that Petitioner complained of "numbness immediately post-vaccine." *Id.* When reporting her injury to her employer on October 1, 2019 (four days later), Petitioner stated that a "student" administered the vaccine "too high up" and that "right away the needle hit the nerve spot . . . [g]iving [her] sharp shooting pain" and a "tingling sensation." Ex. 2 at 4.

Two days later, Petitioner was evaluated by her employer's occupational medicine physician. Ex. 4 at 22. Petitioner reported "numbness/tingling down the left arm to the left middle/ring/pinky fingers." *Id.* On exam, she displayed reduced range of motion, positive special tests, and reduced strength with abduction. *Id*. at 25-26. She was diagnosed with a sprain of the left shoulder, a left trapezius muscle strain, and referred to physical and massage therapy. *Id.* at 26.

Petitioner began physical therapy on October 9, 2019. Ex. 10 at 27. During her initial evaluation, Petitioner reported that she experienced "shooting pain, tingling, and numbness" immediately upon receiving her flu shot. *Id.* at 30. On exam, Petitioner had pain and tightness in her cervical muscles, positive ulnar and radial nerve testing, and reduced strength in both shoulders. *Id*. at 30-31. The therapist noted three or more body systems and functions affecting the plan of care, which included Petitioner's "L upper extremity, R upper extremity, head, and neck." *Id*. at 31-32.

Petitioner also had an initial massage therapy evaluation on October 9, 2019. Ex. 10 at 57. She had tenderness in the "L Pec MJ, L Bicep, Tricep, Supraspinatus. Moderate tendon in L Rhomboid and Trapezius." *Id*. at 58. She received treatment to both shoulders, her neck, and her lower back. *Id*.

Petitioner followed up with occupational medicine on October 25, 2019, with improved symptoms. Ex. 4 at 39. She was encouraged to continue her therapies once cleared after an upcoming unrelated surgery. *Id*. at 40-41. She returned on December 2, 2019, reporting only mild improvement and continued "tingling down from [the] left elbow down to the left ring/middle fingers." *Id*. at 55. It was recommended that she resume physical and massage therapy and was referred for an EMG "from [the] neck down the left arm." *Id*. at 54, 57.

On December 10, 2019, Petitioner saw a physical medicine and rehabilitation doctor for an EMG. Ex. 1 at 7. She reported "left neck soreness and tightness and left upper extremity pain, numbness, and tingling involving the middle through small fingers beginning immediately after flu vaccine." *Id.* Petitioner circled the entire left arm, hand, neck, and upper back on the intake diagram she completed for this appointment, indicated pain in the shoulder, elbow, and forearm, and indicated numbness and tingling in the fingers. *Id*. at 36. The EMG was normal and ruled out cervical radiculopathy, brachial plexopathy, carpal tunnel syndrome, and ulnar neuropathy. Ex. 1 at 7.

She returned to occupational medicine on December 26, 2019, to review the EMG. Ex. 4 at 67. She reported "tightness" in her left shoulder and continued "mild tingling" down the left arm. *Id*. at 69. On January 27, 2020 she was cleared to return to physical therapy and encouraged to see an orthopedist. *Id*. at 78-82.

On February 11, 2020, Petitioner was evaluated by an orthopedist. Ex. 3 at 7. She reported "left shoulder pain that stemmed from a flu shot 9/6/19." *Id*. at 9. She reported no numbness or tingling. *Id*. The assessment was "left shoulder pain associated with the flu shot, now likely with some impingement symptoms." *Id*. at 12. She was encouraged to continue with physical therapy. *Id.*

Petitioner was "near MMI" on March 13, 2020, during her follow up with occupational medicine. Ex. 4 at 107. She was encouraged to continue physical therapy and massage for another five weeks. *Id*. She completed a total of 24 physical therapy sessions through April 30, 2020, and finished her massage therapy on May 11, 2020. *See* Ex. 2 at 101; Ex. 10 at 73. At the end of her physical therapy, Petitioner reported "ongoing neural [symptoms] in [the] L posterior forearm." *Id*. at 76.

Petitioner had a final visit with occupational medicine six months later, on September 9, 2020. Ex. 4 at 130. She reported a "recurrence of constant numbness/tingling down her left arm for the past month, also soreness of [the] left

3

shoulder." *Id.* at 132. On exam, she had "very mild tenderness to palpation," normal range of motion, and almost normal strength. *Id.* at 133-134. Petitioner declined an MRI and pain medication and requested a referral to return to her orthopedist. *Id.* at 134.

On May 6, 2024 (now more than three years after her vaccination), Petitioner received acupuncture treatment. Ex. 16 at 2. She reported osteoarthritis in both shoulders and that her shoulder pain for "at least 5 years." *Id.*

There are no further records relating to Petitioner's left shoulder pain.

### III.    Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did

not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.    Findings of Fact - Symptoms limited to Vaccinated Shoulder

Respondent argues that "Petitioner repeatedly complained of pain and other symptoms that extended beyond her left shoulder." Resp. at 6. A close review of the filed medical records reveals substantial support for this argument. At her first treater visit on October 3, 2019 (only six days after vaccination), Petitioner reported "numbness/tingling down the left arm to the left middle/ring/pinky fingers." Ex. 4 at 22. She continued to report numbness and tingling down her left arm throughout her treatment. *See e.g.* Ex. 1 at 7; Ex. 2 at 76; Ex 4 at 55, 69, 130. When she reported for her EMG testing, Petitioner circled the entire left arm, hand, neck, and upper back on the intake diagram she completed, indicated pain in the shoulder, elbow, and forearm, and indicated numbness and tingling in the fingers. Ex. 1 at 36. Petitioner limited her symptoms to her shoulder only once during her initial treatment course – when she saw an orthopedist on February 11, 2020. *See* Ex. 3 at 7-9.

Petitioner argues that complaints of symptoms outside of the vaccinated shoulder "are not supported by the medical records," since her doctors deemed her reports of numbness and tingling as "not medically relevant after her negative EMG." Repl. at 2. She further argues that "doctors treated only the affected shoulder." *Id*. But there were objective examination findings and treatment provided to areas other than Petitioner's left shoulder. At her first visit, for example, Petitioner was diagnosed with a strain of her left trapezius muscle in her upper back. Ex. 4 at 26. Then, during her physical therapy initial

evaluation, Petitioner had pain and tightness in her cervical muscles, positive ulnar and radial nerve testing, and reduced strength in both shoulders. Ex. 10 at 30-31. The therapist noted "3 or more" body systems and functions affecting the plan of care, and that those included Petitioner's "L upper extremity, R upper extremity, head, and neck." *Id*. at 31-32. Petitioner's massage therapist also found tenderness in the "L Pec MJ, L Bicep, Tricep, Supraspinatus. Moderate tendon in L Rhomboid and Trapezius" and provided massage treatment to both shoulders, neck, and lower back. *Id*. at 58.

In this case, Petitioner did not merely complain of pain and symptoms centered in the shoulder but extending to other areas. Rather, throughout her treatment Petitioner placed a high emphasis upon the numbness and tingling she had experienced after her vaccination. She reported "shooting pain" and a tingling sensation to the vaccine administrator at the time of her vaccination. *See* Ex. 11 at 2. And she repeatedly referred to numbness and tingling (and other issues, such as pain and tightness) *outside the shoulder* throughout her treatment. *See* Ex. 1 at 7 ("left neck soreness and tightness and left upper extremity pain, numbness, and tingling involving the middle through small fingers beginning immediately after flu vaccine."): Ex. 4 at 22 ("numbness/tingling down the left arm to the left middle/ring/pinky fingers."); Ex. 4 at 55 (continued "tingling down from [the] left elbow down to the left ring/middle fingers."); Ex. 4 at 69 (continued "mild tingling" down the left arm.); Ex. 4 at 132 ("recurrence of constant numbness/tingling down her left arm for the past month, also soreness of [the] left shoulder.").

Because Petitioner experienced both subjective and objective symptoms outside of the vaccinated shoulder - in her neck, upper back, forearm, and fingers - she cannot preponderantly establish the third QAI criterion of a Table SIRVA claim.

### Conclusion

Petitioner cannot preponderantly establish that her symptoms were limited to the vaccinated shoulder as required by Vaccine Table's Qualifications and Aids to Interpretation for a Table SIRVA. Thus this claim can only proceed as a causation-in-fact matter. Accordingly, Petitioner's Table SIRVA claim is DISMISSED, and the case will be reassigned to a Special Master outside of the SPU for adjudication of a causation-in-fact claim.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master